UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| MICHAEL K. GARDNER, | ) | Case No. ED CV 06-00579-VBK |
| | ) | |
| Plaintiff, | ) | MEMO OPINION AND ORDER |
| | ) | |
| v. | ) | (Social Security Case) |
| | ) | |
| MICHAEL J. ASTRUE,[1] | ) | |
| Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |

This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits. Pursuant to 28 U.S.C. §636(c), the parties have consented that the case may be handled by the Magistrate Judge. The action arises under 42 U.S.C. §405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the record before the Commissioner. The parties have filed their pleadings and supporting memoranda, and the Commissioner has filed the certified Administrative Record ("AR"). After reviewing the matter, the Court

---

[1] On February 1, 2007, Michael J. Astrue became Commissioner of Social Security. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue should be substituted, therefore, for Commissioner Jo Anne B. Barnhart as the defendant in this suit.

concludes that the decision of the Commissioner must be affirmed.

Plaintiff raises three issues, the first two of which are related. Plaintiff first asserts that the Administrative Law Judge ("ALJ") did not properly consider a consultative psychiatric opinion of Dr. Jordan. The second issue concerns Plaintiff's contention that the ALJ improperly omitted Dr. Jordan's mental functional limitations from the hypothetical question posed to the vocational expert ("VE"). Finally, Plaintiff's third issue concerns his assertion that the ALJ failed to properly consider lay witness evidence from his wife.

Addressing the first issue, Plaintiff received a consultative psychiatric examination ("CE") at the request of the Department of Social Services on August 14, 2002, and then again on March 13, 2003. (AR 228-232, 238-242.) As part of Dr. Jordan's first report, he indicated in a "Medical Source Statement" that, "probable work interactions would be inappropriate. He would handle stress poorly, but he would be able to follow the instructions." (AR 231.) In the second CE, Dr. Jordan stated, "he would have problems interacted [sic] and adapting to stress; however, he could follow instructions because there is no impairment of cognition." (AR 241.)

At the hearing, the ALJ elicited testimony from a medical expert ("ME"), Dr. Malancharuvil. (AR 23-64 at 32-39.) After reviewing all the medical evidence, the ME opined that with regard to mental limitations,

> "So he's restricted to moderately-complex tasks in a relatively habituated setting with no demand for emotionally-charged, intense, interpersonal interactions. This is because of his irritability which he still seems to have, so he should not have emotionally-charged interactions

at work."
(AR 37.)

The ALJ considered the medical evidence, including the ME's opinion, and accorded the latter opinion controlling weight. The residual functional capacity ("RFC") determined by the ALJ included the following mental limitations:

> "... able to perform work requiring four- to five-step moderately complex tasks; limited to work in a relatively habituated setting, with an object oriented setting preferred but not required; limited to work with no safety operations and/or hypervigilence; and unable to perform work requiring intense interpersonal or emotionally charged contact with co-workers, supervisors, and/or the public."

(AR 17.)

Plaintiff's essential complaint is that Dr. Jordan's specific wording was not included in the RFC assessment, and therefore, it was effectively ignored by the ALJ. The Commissioner asserts that mental limitations incorporated by the ALJ into the RFC effectively encompass or subsume Dr. Jordan's findings. The Court agrees with the Commissioner's argument in this regard. There is no material difference between the ALJ's RFC findings and Dr. Jordan's conclusions, although the wording may be somewhat different. See Macri v. Chater, 93 F.3d 540, 544 (9th Cir. 1996).

Having determined that the ALJ correctly assessed Plaintiff's mental RFC, the second issue raised in the Joint Stipulation ("JS") must be rejected. The hypothetical question posed by the ALJ to the

1  VE precluded "intense interpersonal or emotionally-charged contact
2  with co-workers, supervisors, or the public." (AR 61.)  Again, the
3  Court finds no effective difference between Dr. Jordan's opinion, that
4  Plaintiff would have inappropriate work interactions, with the ALJ's
5  restriction against no intense interpersonal or emotionally-charged
6  contacts with co-workers, supervisors, or the public.  As such, the
7  question posed by the ALJ to the VE did set forth all relevant
8  limitations and restrictions, which is what the law requires.  See
9  Embry v. Bowen, 849 F.2d 418, 423 (9th Cir. 1988).  Thus, Plaintiff's
10 second issue has no merit.

11      Plaintiff's final contention is that the ALJ failed to accord
12 proper consideration to the lay witness testimony of his wife, Yolanda
13 Gardner.  Plaintiff correctly points out that, in his decision, the
14 ALJ stated incorrectly that Plaintiff's wife testified at the hearing.
15 (See AR at 17.)  Plaintiff's wife did submit a third party
16 questionnaire ("Function Report Adult - Third Party") on June 29,
17 2003. (AR 168-176.)  As Plaintiff notes, his wife there explained that
18 his typical daily activities include taking of medication and then
19 sleeping most of the day; that he has trouble sleeping because of
20 seizures and dreams about falling; that she has to tell Plaintiff to
21 groom and bathe himself and take his medication; that he does not do
22 house or yard work because of sleepiness; that he does not drive
23 because of seizures; and that his condition affects his walking,
24 memory, and other functions.  Plaintiff's wife stated that he does not
25 handle stress or changes in his routine very well. (AR 169-174.)

26      The ALJ noted the substance of Plaintiff's wife's evidence in the
27 decision: "... the [Plaintiff's] wife testified that he has been
28 markedly limited in his mental functioning, including marked

4

1 impairment in his memory." (AR 17.)

2 While Plaintiff contends that the ALJ improperly rejected the
3 evidence provided by his wife, the Commissioner answers that the ALJ
4 discharged his obligation in considering this evidence (see 20 C.F.R.
5 §416.945 (2006); Social Security Ruling ["SSR"] 96-8p); however,
6 because the evidence provided by Plaintiff's wife was materially
7 uncorroborated by the medical evidence, the ALJ was not bound to adopt
8 the observations of Plaintiff's wife.  In fact, these observations
9 concerning Plaintiff's mental functioning were not supported by the
10 medical evidence in the record, including the two psychiatric CEs, the
11 assessment of the State Agency physicians, and that of the ME at the
12 hearing.  Under these circumstances, the ALJ was not required to adopt
13 the lay witness observations. See Bayliss v. Barnhart, 427 F.3d 1211,
14 1218 (9th Cir. 2005)("The ALJ accepted the testimony of Bayliss's
15 family and friends that was consistent with the record ...; he
16 rejected portions of their testimony that did not meet this standard.
17 The ALJ's rejection of certain testimony is supported by substantial
18 evidence and was not error." 427 F.3d at 1218.  Thus, the ALJ did not
19 ignore the testimony or improperly reject it; rather, he properly
20 relied, instead, on contradictory psychiatric evidence in the record.

21 For the foregoing reasons, the Commissioner's Decision will be
22 affirmed, and the matter will be dismissed with prejudice.

23 **IT IS SO ORDERED.**

25 DATED:  March 6, 2007

27 /s/
VICTOR B. KENTON
UNITED STATES MAGISTRATE JUDGE

5